IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CKIE MUMIN ALJATHIYA                                                                   PLAINTIFF

V.                              CASE NO. 4:17-CV-554-JLH-BD

CHARLES DOC HOLLADAY, et al.                                                      DEFENDANTS

RECOMMENDED DISPOSITION

I.    **Procedures for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Judge J. Leon Holmes. Any party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection. All objections must be received in the office of the Court Clerk within 14 days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive the right to appeal.

II.   **Background**

Plaintiff Ckie Mumin Aljathiya, an Arkansas Department of Correction inmate, filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket entries #1, #2) In his complaint, Mr. Aljathiya complains that, while he was held at the Pulaski County Detention Facility ("PCDF") as a pre-trial detainee, he was choked and beaten by Defendant Newburn, after which Defendants Holladay, Mecca, Garrison, Mahone, Crawford, and Grayson did not provide him medical care. (#2, #5)

Defendants Newburn, Holladay, Mecca, Garrison, Mahone, Crawford, and Grayson ("Defendants") have moved for summary judgment. (#48) Mr. Aljathiya was given an opportunity to respond (#51), but to date, has not filed a response to the motion.

### III. Standard

Summary judgment means that the court rules in favor of a party without the need for a trial. A moving party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute as to any fact important to the outcome of the case. For purposes of reviewing the Defendants' motion, the Court will view the facts in a light most favorable to Mr. Aljathiya. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322B23 (1986).

### IV. Facts

On September 19, 2016, Mr. Aljathiya was booked into the PCDF. (#49-1, p.1) On May 1, 2017, he was committed to the Arkansas State Hospital ("ASH"). (#49-1, p.2) On June 23, 2017, the Pulaski County Circuit Court ("PCCC") ordered the Pulaski County Sheriff's Office to transport Mr. Aljathiya from the ASH to PCCC for a June 29, 2017 hearing. (#49-1, p.2, 9)

After the hearing, Mr. Aljathiya went to the PCCC's inmate holding area until he could be transported back to ASH. (#49-1, p. 2, 11) Defendants and Mr. Aljathiya relate different versions of the altercation that ensued.

A.  Facts According to Mr. Aljathiya

Mr. Aljathiya relies on his own statements to support his version of the facts. (#2, #5) He asserts that, as he was leaving court on the way back to his holding cell, Defendant Newburn started pushing him, and they had a verbal altercation. (#2, p.7) Defendant Newburn began choking Mr. Aljathiya, banging his head against a steel-caged wall, and kicking him in the right shoulder with the heel of his boot. (#2, p.4) Mr. Aljathiya initially lost his vision. (#2, p.4) As a result of the attack, he had an open wound on the back of his head and was severely bleeding. His right shoulder and neck were injured, and his eyeglasses were damaged. (#2, p.4)

After retrieving his glasses, Mr. Aljathiya called to Defendants Mecca, Garrison, Mahone, Crawford, and Grayson for medical help. (#2, p.5) Thirty minutes later, Mr. Aljathiya was transported to ASH. (#2, p.5) The staff at the ASH noticed that he was bleeding, asked him what happened, and took pictures of his injuries. (#2, p.5) That same day, staff from Pulaski County Sheriff's Office transported Mr. Aljathiya back to PCDF. (#2, p.5)

B.  Facts According to Defendants

Defendants' version of the event is substantially different from Mr. Aljathiya's. In support of their motion for summary judgment, Defendants attach an affidavit from Lesa Warner, the administrator at the PCDF (#49-1); an affidavit from Jacob Mitchell, a registered nurse at the PCDF (#49-2); Defendant Newburn's incident report (#49-1, pp.

10-12); and video footage of Mr. Aljathiya in the holding area of the PCCC on June 29, 2017, from two different cameras. (#49)

According to the Defendants, on June 29, 2017, Mr. Aljathiya was waiting in the holding area at PCCC to be transported back to ASH when Defendant Newburn approached and asked him to stand to the side to be searched. (#49-1, p.11, Ex. 1-5, camera 5) Mr. Aljathiya initially refused but ultimately allowed Defendant Newburn to search him. (#49-1, p.11, Ex. 1-5, camera 5)

Mr. Aljathiya was then ordered to go into a holding cell, but he refused. (#49-1, p.11) Defendant Newburn placed an open hand on Mr. Aljathiya's back to guide him to the cell. (#49-1, p.11) At that point, Mr. Aljathiya turned his shoulder and yelled "keep your hands off me motherfucker." (#49-1, p.11) Defendant Newburn continued to walk Mr. Aljathiya to the holding cell with his hand in the middle of Mr. Aljathiya's back. (#49-1, p.11 & Ex. 1-5, camera 4)

At the entrance of the cell, Mr. Aljathiya jerked away from Defendant Newburn. (#49-1, p.11, & Ex. 1-5, camera 4) Defendant Newburn grabbed Mr. Aljathiya by his jacket and placed his back against the wall. (#49-1, p.11) Defendant Newburn then ordered Mr. Aljathiya to remain still until Defendant Newburn could exit the cell. (#49-1, p.11) Mr. Aljathiya complied and remained still. (#49-1, p.11) Once the cell door was secured, Mr. Aljathiya began kicking the door and yelling threats. (#49-1, p.11) A special emergency response team transported Mr. Aljathiya back to the ASH. (#49-1, p.11)

4

The following is a brief description of what can be viewed on the videos produced by the Defendants: At 10:38:17 a.m., Mr. Aljathiya can be seen in the holding area. Defendant Newburn appears to instruct him to move to the side for a search. (#49-1, Ex. 1-5, camera 5) Mr. Aljathiya complies, and Defendant Newburn conducts a search of Mr. Aljathiya's body. (#49-1, Ex. 1-5, camera 5)

At 10:39:25 a.m., Defendant Newburn begins to walk Mr. Aljathiya down the hall off-camera. (#49-1, Ex. 1-5, camera 5) At 10:39:35 a.m., Defendant Newburn appears on camera 4 escorting Mr. Aljathiya down the hall with an unnamed officer following behind. (#49-1, Ex.1-5, camera 4) Defendant Newburn has his hand on Mr. Aljathiya's back, as the other officer follows. (#49-1, Ex.1-5, camera 4)

At 10:39:52 a.m., Mr. Aljathiya jerks away from Defendant Newburn and the two enter the cell. (#49-1, Ex.1-5, camera 4) At this point, they can no longer be seen on the video. (#49-1, Ex.1-5, camera 4) The door to the cell, which appears to be a metal cage, remains open. (#49-1, Ex.1-5, camera 4) The unnamed officer looks briefly into the cell, then turns to walk away. (#49-1, Ex.1-5, camera 4) As the unnamed officer walks down the hallway, Defendant Newburn emerges, closes the cell door, and locks it at 10:40:03 a.m. (#49-1, Ex.1-5, camera 4) Defendant Newburn was off-camera inside Mr. Aljathiya's cell for a total of 10 seconds. (#49-1, Ex.1-5, camera 4)

At 11:17:52 a.m., the emergency response team opens the door to Mr. Aljathiya's cell, and he exits. (#49-1, Ex.1-5, camera 4) No noticeable injuries appear as Mr.

Aljathiya leaves the cell and walks down the hall. (#49-1, Ex.1-5, camera 4 & 5) His glasses also do not appear damaged; no blood appears on his shirt or his hands; and he does not appear to have any difficulty walking down the hall. (#49-1, Ex.1-5, camera 4 & 5)

Later that day, Mr. Aljathiya was booked back into the PCDF. During the book-in medical screening, Mr. Aljathiya said that he was involved in a physical altercation at PCCC. (#49-2, p.1, 3) The intake nurse noted a small superficial laceration to the back of Mr. Aljathiya's head. (#49-2, p.1, 3) The laceration was cleaned due to bleeding. (#49-2, p.1, 3)

Several months later, on October 6, 2017, Mr. Aljathiya complained to a nurse of pain in his head as the result of an attack in August of 2017. (#49-2, p.1) He was assessed as having a headache and prescribed anti-inflammatory medication. (#49-2, p.1)

## V. Discussion

### A. Excessive Force Claims

The constitutional standard applicable in an excessive force case depends upon the plaintiff's status. *Andrews v. Neer*, 253 F.3d 1052, 1060-61 (8th Cir. 2001). Because the State may not punish arrestees or pretrial detainees, excessive force claims brought by arrestees (under the Fourth Amendment) or pretrial detainees (under the Fourteenth Amendment) are analyzed under an "objective reasonableness" standard.[1] *Id*. (citing *Bell*

---

[1] It is undisputed that Mr. Aljathiya was a pre-trial detainee at the time his claims arose.

*v. Wolfish*, 441 U.S. 520, 535 (1979). Accordingly, in order to prevail on an excessive force claim, Mr. Aljathiya must show Defendant Newburn purposely or knowingly used objectively unreasonable force. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

Whether the application of force was unreasonable turns on the facts and circumstances of each particular case, and the officer's action are assessed from the perspective of a reasonable officer and what the officer knew at that time. *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017). The following factors are relevant in assessing whether the force used was objectively reasonable: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Id*.

Here, it is clear from the video that Mr. Aljathiya jerked away from Defendant Newburn as they entered his cell. Defendant Newburn was then in the cell with the door open for 10 seconds with another officer in the hallway. Mr. Aljathiya does not appear to be injured when leaving the cell. There is no indication on the video of a bleeding open wound, as Mr. Aljathiya alleges. There is no blood visible on his shirt or hands, and his glasses do not appear to be damaged. In fact, the intake nurse only noted a superficial laceration at the back of Mr. Aljathiya's head upon arrival at the PCDF later that day.

Based on the videos, no reasonable juror would believe that Defendant Newburn choked Mr. Aljathiya, banged his head against a steel cage wall, and kicked him in the shoulder so severely that Mr. Aljathiya lost his vision within a 10-second window. When Mr. Aljathiya emerged from the cell after the 10 seconds when no video image is available, he bore no signs of an altercation.

Mr. Aljathiya's version of the facts are controverted by credible evidence so as to render them unbelievable. Accordingly, based on the evidence and Local Rule 56.1, for purposes of summary judgment, the Court assumes that the Defendants' version of the incident is accurate.

The Court finds it objectively reasonable that Defendant Newburn grabbed Mr. Aljathiya by his jacket after he resisted and placed him against the wall in his cell, and ordered him to remain there until Defendant Newburn could safely exit.

B.    Deliberate Indifference Claims

To succeed on a claim of inadequate medical care, a prisoner must show that he had an objectively serious medical need and that prison officials subjectively knew of, but deliberately disregarded, that serious medical need.[2] *Estelle v. Gamble*, 429 U.S. 97,

---

[2] Because he was a pretrial detainee, Mr. Aljathiya's inadequate-medical-care claims are analyzed under the Fourteenth Amendment's Due Process Clause, instead of the Eighth Amendment's Cruel and Unusual Punishment Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, the Eighth Circuit applies the same deliberate-indifference standard whether claims are analyzed under the Fourteenth or Eighth Amendment. *See Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

8

104-08 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Deliberate indifference is a high standard. Negligence, or even gross negligence, does not rise to the level of a constitutional violation. *Langford,* 614 F.3d at 460; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)); see also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (to prevail on an Eighth Amendment claim, inmate must show that defendants' mental state was akin to criminal recklessness).

A medical need is "objectively serious" if it has been "diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *McRaven v. Sanders,* 577 F.3d 974, 982 (8th Cir. 2009). The determination of whether a medical need is objectively serious is an issue of fact. *Jones v. Minnesota Dept. of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008). However, summary judgment is appropriate if, based upon the undisputed facts, no reasonable jury could find that the prisoner suffered from an objectively serious medical need. *Id.* As noted above, a review of the video images reveals no serious injury resulting from Mr. Aljathiya's altercation with Defendant Newburn.

9

1.  Defendant Holladay

In a § 1983 action, a supervisor cannot be held liable for the constitutional violations of subordinates based solely on his or her role as a supervisor. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Here, Mr. Aljathiya does not allege that Defendant Holladay was personally involved in the underlying incident. Rather, his complaint against Defendant Holladay is as the sheriff and, therefore, the supervisor of PCDF. This is simply insufficient to hold Defendant Holladay liable.

2.  Defendants Mecca, Garrison, Mahone, Crawford, and Grayson

Mr. Aljathiya's allegation that he was bleeding profusely from an open head wound is not only unsupported, but plainly controverted by the video evidence. The video images do not show that Mr. Aljathiya was bleeding severely. In fact, there were no noticeable wounds on Mr. Aljathiya as he was leaving PCCC.

Mr. Aljathiya asserts that staff at the ASH noted his wounds and took photographs, but he does not provide any evidence to support his assertion. Upon arrival at the PCDF later on the day of the incident, the intake nurse noted only a superficial laceration with minimal bleeding. Mr. Aljathiya has not offered any evidence of an injury resulting from a delay in having his laceration cleaned. At most, Defendants were negligent in not having Mr. Aljathiya's laceration cleaned before transporting him to ASH. *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997)( "[a]n inmate who complains that a delay in medical treatment rose to a constitutional violation must place

verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.")

Accordingly, under these facts that cannot be seriously disputed, Mr. Aljathiya did not suffer any serious medical need that the Defendants ignored; nor did he suffer any harm by the delay in cleaning the laceration to the back of his head. Defendants Mecca, Garrison, Mahone, Crawford, and Grayson were not deliberately indifferent to Mr. Aljathiya's medical needs, and they are entitled to judgment as a matter of law.

C. Official Capacity Claims

Mr. Aljathiya's claims against the Defendants in their official capacities are, in effect, claims against Pulaski County, Arkansas. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir.2010). Local governments are not liable under § 1983 for injuries inflicted solely by their employees or agents. *Monell v. New York Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a county is liable for the acts of its employee only when the employee is carrying out a county policy or custom. *Id*.; *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 632 (8th Cir.2009). Here, Mr. Aljathiya has not set forth facts to show that Pulaski County had an unconstitutional policy or custom that caused him harm. Because the Defendants did not violate any of Mr. Aljathiya's constitutional rights, it follows that he was not injured as a result of an unconstitutional county custom or policy. Accordingly, Mr. Aljathiya's official-capacity claims against the Defendants should be dismissed.

## VI. <u>Conclusion</u>

The Court recommends that the Defendants' motion for summary judgment (#48) be GRANTED and that Mr. Aljathiya's claims be DISMISSED, with prejudice.

DATED, this 13th day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE